IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRENCE WASHINGTON, | ) | |
| Plaintiff, | ) | Civil Action No. 07-976 |
| v. | ) | Judge Conti |
| | ) | Magistrate Judge Caiazza |
| C.O. T. MORGAN, et al., | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Defendants' Motion for Summary Judgment (Doc. 12) be granted.

### II. REPORT

The Plaintiff, Terrence Washington ("Washington" or "the Plaintiff"), is a state inmate confined at the State Correctional Institution at Fayette, located in LaBelle, Pennsylvania ("SCI-Fayette"). Washington commenced this action in the state courts alleging that he was subjected to various violations of his constitutional rights while confined at SCI-Fayette. The Defendants removed the case to this Court on July 12, 2007.

The Defendants have filed a Motion for Summary Judgment (Doc. 12) and have filed a brief and a statement of facts in support. (Docs. 13 and 14). The Plaintiff has responded (Doc. 18) and the Motion is now ripe for disposition.

**A. Applicable Legal Principles**

Washington's burden in response to a well-pleaded motion for

summary judgment is to present "'. . . specific facts showing that there is a *genuine issue for trial.*' Fed.Rule Civ.Proc. 56(e)(emphasis added)" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B. The Exhaustion of Administrative Remedies**

1. The Applicable Law.

The Defendants assert that Washington failed to exhaust his available administrative remedies with respect to many of the claims made in his Complaint. The applicable – and mandatory – exhaustion requirement which Congress enacted in the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996) reads as follows:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted</u>.

42 U.S.C.A. § 1997e(a) (emphasis added). Before filing a civil action, a plaintiff-inmate must exhaust his administrative remedies; this requirement remains mandatory even if the ultimate relief sought by the prisoner is not available through the administrative process. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir.2000), cert. granted, 531 U.S. 956 (2000), aff'd, 532

U.S. 731, (2001). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002)(citing Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)). Further, the Court of Appeals for the Third Circuit has reaffirmed the exhaustion rule. It is insufficient for a prisoner to claim that "there is no further process available to the inmate within the grievance system (which would occur if, say, an inmate fails to file an administrative appeal)...." Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir.2004). Rather, the Spruill court made clear that §1997e(a) requires an inmate to "avail[ ] himself of every process at every turn (which would require all appeals to be timely pursued, etc.)." Id. In short, "it is beyond the power of this court - or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis, 204 F.3d at 73 (quotation omitted).

### 2. The Plaintiff's Allegations

The Plaintiff alleges that he was issued a fabricated Misconduct Report on May 23, 2006, by C.O. Morgan and that he was sent to the Restricted Housing Unit ("RHU")(Doc. 1, Ex. 3, ¶1). Later that day, C.O. Tharp allegedly gave the Plaintiff an empty food tray (Id., ¶2).

Washington also alleges that he was moved to another cell block that same day, and that inmates in the surrounding cells

were moved in a conspiracy to isolate him (Id., ¶3). Washington also complains that he was found guilty of the misconduct and was sanctioned with seventy five days in the Restricted Housing Unit ("RHU") (Id., ¶6).

Defendants Erickson and Haines allegedly denied the Plaintiff breakfast and lunch on May 24, 2006 (Id., ¶4). They also purportedly denied him time in the recreation yard, and refused to deliver his outgoing mail (Id.). Washington also claims that on May 25, 2006, Erickson and Haines threw his breakfast tray on the floor of his cell (Id., ¶5). This conduct was purportedly repeated at the lunch meal, but this time these Defendants allegedly made a false report claiming that the Plaintiff threw his lunch tray at Erickson, and that a Misconduct was issued (Id., ¶7). Defendant Wright then removed the Plaintiff from his cell, placed him in an isolation cell on food restriction -the Plaintiff was fed a "food loaf"- and confiscated his personal belongings (Id., ¶8). Washington asserts that he informed Defendants Nickelson and Forte about the incident, but that they refused to initiate an investigation (Id., ¶9).

Defendant Yatchtshyn allegedly denied Washington his food loaf at dinnertime on May 25, 2006 (Id.). He was also denied his breakfast on May 26, 2006.

Defendant Erickson allegedly fabricated Misconduct #A744244

against Washington with respect to the tray-throwing incident, and Defendant Nickelson allegedly failed to investigate that matter (Id., ¶10). The Plaintiff was sentenced to ninety days solitary confinement as a result of this misconduct (Id., ¶11).

Finally, Washington alleges that Defendants Hawkins and Hull inventoried his cell property on June 8, 2006, and that several items were confiscated (Id., ¶12). Washington filed a Grievance, but it was denied by Defendant Trempis.

The Plaintiff makes a general allegation that all of the actions taken against him were in retaliation for his having made comments to Pennsylvania Department of Corrections ("DOC") personnel that led to the misconduct charges of May 23, 2006.

3. The Analysis

The Pennsylvania DOC Consolidated Inmate Review System provides for three levels of administrative review of inmate grievances: the initial grievance submitted to the Facility Grievance Coordinator, an intermediate level of appeal to the Facility Manager, and a final level of appeal to the Secretary's Office of Inmate Grievances and Appeals. See Commonwealth of Pennsylvania, Department of Corrections, Consolidated Inmate Grievance Review System, Policy No. DC-ADM 804 § VI. See also Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir.2000) (outlining the grievance review process).

The Defendants have attached to their Motion a Declaration from Donna Varner, the Assistant Chief for Secretary's Office of Inmate Grievances and Appeals for the Pennsylvania Department of Corrections (Doc. 12, Ex. 1). She states that she reviewed the computerized records of inmate grievances, which revealed the following:

> I have determined that inmate Washington has not filed any grievance with regard to a conspiracy to isolate and punish him by moving him to another block and then methodically moving the inmates from the surrounding cells on May 23, 2006. Furthermore, inmate Washington has not filed any grievance regarding the denial of recreation time and/or refusal to deliver his mail to the mailbox on May 24, 2006.

(Id., p. 2).

The Defendants have also attached copies of Grievances filed by the Plaintiff. Grievance 155347, dated June 10, 2006, but date-stamped June 19, 2006 by the Superintendent's Office at SCI-Fayette, includes allegations that: (1) Defendants Erickson and Haines denied Washington breakfast and lunch trays on May 24, 2006; (2) Erickson threw Washington's breakfast through the meal slot on May 25, 2006; (3) Erickson and Haines caused his lunch tray to spill and then blamed Washington; and (4) he was denied his food loaf at dinner on May 25, 2006, and at breakfast on May 26, 2006 (Doc. 12, Ex. 2). The Grievance was denied as having been untimely submitted -the fifteen day period expired on June 10, 2006.

The Defendants argue that any claims arising from a claimed "conspiracy" to isolate Washington in his RHU cell, as well as any claims related to actions taken by Defendants Erickson and Haines are barred because of Washington's failure to properly exhaust his administrative remedies. Washington responds by attaching an undated letter he sent to the DOC's Office of Professional Responsibility (Doc. 18, Ex. B). In that letter, Washington details the allegations which are the subject of the Defendants' failure to exhaust argument. Two responses from the DOC, one dated October 5, 2006, and the next dated November 1, 2006, direct Washington to pursue any issues relating to the failure of prison personnel to serve him meals through the grievance system.

Finally, there is no allegation in any grievance filed by the Plaintiff claiming that the actions which serve as the basis of his lawsuit were performed in retaliation for the comments made by him on May 23, 2006.

In sum, Washington has not presented any evidence which questions the evidence presented by the Defendants. Consequently, the Defendants have established that the claims relating to: 1) a conspiracy; 2) the Defendants' failure to serve him meals on May 24, 25 and 26, 2006: and 3) the denial of exercise privileges and access to the prison mail system on May 24, 2006, were not properly presented through the DOC's grievance system. Further,

no claim of retaliation was alleged in the grievances filed by the Plaintiff -timely or otherwise. Hence, review of these claims is barred and they will not be addressed further.

B. **The Remaining Claims.**

1. Supervisory Defendants.

Washington alleges that Defendants Crumb, Mistrik, Nickelson, Forte, Cross, Trempis and Wilson failed to correct the actions of other DOC employees either during review of grievances filed by Washington, or during the review process of the Misconducts issued to Washington. Officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility. Supervisory liability, however, may not be premised solely upon a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Rather, some personal involvement of the supervising official must be alleged. Id. Supervisory liability for Section 1983 violations can be established by evidence showing that officials: participated in violating a plaintiff's rights; directed others to violate a plaintiff's rights; knew of, and acquiesced in, their subordinates' violation of a plaintiff's rights; or knew of, and tolerated, past or ongoing misbehavior. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 & n.3 (3d Cir.1995).

A supervising public official has no affirmative duty to

supervise and discipline to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, Section 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir.1988), cert. denied, 489 U.S. 1065 (1989). However, at a minimum such liability may be imposed "only where there are both: (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Id.

However, participation in an administrative review process is an insufficient basis for Section 1983 liability. Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W. D. Pa. 2006)(denial of grievance or appeal on final review insufficient to establish personal involvement in alleged underlying violation); Watkins v. Horn, 1997 WL 566080 at * 4 (E.D.Pa. 1997)(concurrence in an administrative appeal process is insufficient to establish personal involvement). Therefore, Defendants Crumb, Mistrik, Nickelson, Forte, Cross, Trempis and Wilson are entitled to summary judgment.

  2. Filing of Misconduct Charges and Placement in the RHU.
  Washington alleges that Defendants Morgan and Erickson each

filed fabricated misconduct reports against him for which he was sanctioned with a total of 105 days of disciplinary custody. Claims concerning the misconduct proceedings and the time spent in the RHU necessarily fail.

First, to the extent that Washington asserts that his placement in the RHU violated his right to due process, he must first set out facts which demonstrate that he had a protected liberty interest impaired by the Defendants' actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). Once the Court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Morrissey, 408 U.S. at 481.

In this case, Washington received a total of 105 days disciplinary custody as a result of the two misconducts at issue. A brief period of administrative custody is not an *"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."* Sandin v. Conner, 515 U.S. 472, 483 (1995)(emphasis added). Hence, periods of administrative custody as long as fifteen months are insufficient to state a claim based upon the denial of a protected liberty interest. See Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997) (fifteen months in administrative custody "did not deprive [plaintiff] of a liberty interest"; Smith v. Mensinger, 293 F.3d 641, 652 (3d Cir. 2003) (seven months custody not atypical hardship). Clearly, the brief

period Washington served in administrative custody is not a period of administrative custody which warrants due process protection in the prison context. The Defendants are entitled to summary judgment on the Due Process claim.

Washington may also be making a claim that his grievance proceeding was mishandled because the Defendants did not follow the applicable procedures established by the Pennsylvania Department of Corrections. Prisoners, however, do not possess a due process right to file a grievance, nor does the creation of such a procedure by the state create any federal constitutional rights. Wilson v. Horn, 971 F.Supp,. 943, 947 (E.D.Pa. 1997); Anderson v. Colorado Dept. of Corrections, 185 F.3d 873 (Table), 1999 WL 387163, *2 (10 Cir.1999) ("petitioner's allegations relating to the requirements of the Department of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner."); Metcalf v. Veita, 156 F.3d 1231 (Table) 1998 WL 476254, *2 (6 Cir.1998)("As to the conduct attributed to the warden personally, consisting of denying [the Plaintiff's] appeals and grievances, [the Plaintiff] did not state a due process claim because he suffered no atypical and significant hardship as a result."); Adams v. Rice, 40 F.3d 72, 75 (4 Cir.1994)("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily

established by a state . . . . We therefore affirm the district court's dismissal of this case as lacking a basis in law."); Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, *3 (6 Cir.2000) ("The defendants were not obligated to 'properly' respond to [the Plaintiff's] grievances because there is no inherent constitutional right to an effective prison grievance procedure.") (citations omitted). Thus, this claim fails as well.

Washington also asserts that his placement in disciplinary custody violated the protection against cruel and unusual punishment. To state an Eighth Amendment claim, the Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Mere placement in segregated confinement, without more, does not violate the Eighth Amendment. "[S]egregated confinement in solitary or maximum security is not per se banned by the Eighth Amendment." Clifton v. Robinson, 500 F.Supp. 30, 34 (E. D.Pa.1980)(quoting Burns v. Swenson, 430 F.2d 771, 777 (8th Cir 1979)). Further, "'isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [solitary] confinement unconstitutional absent other illegitimate deprivations.'" In re

<u>Long Term Administrative Segregration of Inmates Designated as Five Percenters</u>, 174 F.3d 464, 472 (4th Cir. 1999)(quoting <u>Sweet v. South Carolina Dept. of Corrections</u>, 529 F.2d 854, 861 (4th Cir.1975))(en banc). Here, at most, Washington asserts that he was sporadically denied meals –and only over a brief time period. That said, there is no allegation in the Complaint which rises to the level of an Eighth Amendment violation because Washington has not claimed that he was denied "the minimal civilized measure of life's necessities." <u>Farmer</u>, 511 U.S. at 834.

Finally, a false misconduct charge does not itself qualify as an Eighth Amendment violation, even if the report was intentionally false. <u>Booth v. Pence</u>, 354 F. Supp.2d 553, 559 (E. D. Pa. 2005). Further, no Due Process claim is set out when a prisoner alleges that misconduct charges were fabricated. <u>Smith v. Mensinger</u>, 293 F.3d 641, 653-654 (3d Cir. 2002)(due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence and groundless misconduct reports). This, these claims necessarily fail, and the Defendants are entitled to summary judgment.

3. <u>Taking of Personal Property.</u>

In <u>Hudson v. Palmer</u>, 468 U.S. 517, 539 (1984), the Supreme Court has made it clear that in order to prevail on a damages claim for an alleged deprivation of due process or taking without just compensation, "the claimant must either avail himself of the

remedies guaranteed by state law or prove that the remedies are inadequate." Here, Washington filed a grievance concerning the alleged taking of his personal property, but he was not granted relief. Thus, he had an available remedy, which has not been shown to be inadequate, and his claim for denial of personal property necessarily fails. Compare, Austin v. Lehman, 893 F.Supp. 448, 454 (E .D. Pa.1995) (both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies).

4. State Constitutional Claim.

Finally, Washington's claims under the Pennsylvania Constitution -if any have been alleged- necessarily fail. Douris v. Schwieker, 229 F.Supp.2d 391 (E. D. Pa. 2002) (explaining that although Pennsylvania courts have not yet addressed the issue, federal courts have consistently held that no private cause of action is available under the Pennsylvania Constitution); see also, Sabatini v. Reinstein, No. CIV. A. 99-2393, 1999 WL 636667 (E. D. Pa. Aug.20, 1999).

### III. CONCLUSION

For the reasons set out in this Report and Recommendation, it is respectfully recommended that the Defendants' Motion for Summary Judgment (Doc. 12) be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for

Magistrates, objections to this Report and Recommendation are due by July 16, 2008. Responses to objections are due by July 28, 2008.

June 30, 2008

*Francis X. Caiazza*
Francis X. Caiazza
United States Magistrate Judge

cc:
TERRANCE WASHINGTON
DN-3858
SCI Fayette
50 Overlook Drive
LaBelle, PA 15450